UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN JOSEPH KUDRICK,

                    Plaintiff,

v.                                                      1:19-CV-1343
                                                       (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC           KENNETH HILLER, ESQ.
  Counsel for Plaintiff
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                   DENNIS CANNING, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II      PAMELA MCKIMENS, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 10.)  The court has jurisdiction over this matter pursuant

to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is granted, and

Defendant's motion is denied.  The Commissioner's decision is reversed and remanded

for calculation of benefits.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1964.  (T. 54.)  He received a GED.  (T. 36.)  Generally, Plaintiff's alleged disability consists of emphysema, bipolar disorder, and adult attention deficit disorder.  (T. 152.)  His alleged disability onset date is March 1, 2015.  (T. 54.)  His date last insured is June 30, 2017.  (*Id*.)  His past relevant work consists of vending machine operator, dishwasher, truck driver, and auto body technician.  (T. 25)

### B.     Procedural History

On June 14, 2016, Plaintiff applied for Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 54.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On July 25, 2018, Plaintiff appeared before the ALJ, Rosanne M. Dummer.  (T. 32-53.)  On November 14, 2018, ALJ Dummer issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 12-31.)  On August 13, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 17-27.)  First, the ALJ found Plaintiff met the insured status requirements through June 30, 2017 and Plaintiff had not engaged in substantial gainful activity since March 1, 2015.  (T. 17.)  Second, the ALJ found Plaintiff had the severe impairments of: emphysema/chronic obstructive pulmonary disease ("COPD"), and

partial left index finger amputation. (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 19.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform unskilled light work as defined in 20 C.F.R. § 404.1567(b); he could:

> sit six of eight hours, two hours at a time.  He could stand/walk six of eight hours, but only stand one hour at a time, and only walk thirty minutes at a time.  [Plaintiff] could occasionally reach overhead and occasionally push/pull; he could frequently reach in other directions, and frequently handle, finger, and feel.  He could occasionally operate foot controls, climb stairs/ramps, balance, stoop, and kneel.  [Plaintiff] should never climb ladders/scaffolds, crouch, crawl, work at unprotected heights, or work in extremes of heat/cold.  He should avoid more than occasional exposure to pulmonary irritants (e.g., dust, odors, fumes).  He could occasionally work with moving mechanical parts, operate a motor vehicle, and tolerate humidity and wetness.  [Plaintiff] could tolerate loud (heavy traffic) noise.

(T. 19.)[1]  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 25-27.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings.  Plaintiff argues the ALJ mischaracterized evidence of record in order to discount Plaintiff's credibility, which then allowed her to disregard the medical expert's

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

opinion that Plaintiff's impairment met a Listing prior to Plaintiff's date last insured.  (Dkt No. 7 at 11-15.)  Plaintiff also filed a reply in which he deemed no reply necessary and relied on his original arguments.  (Dkt. No. 11.)

### B.    Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues substantial evidence supports the ALJ's decision.  (Dkt. No. 9 at 13-19.)

## III.   RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

5

are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.   The ALJ's Analysis of Plaintiff's Subjective Complaints

Plaintiff argues the ALJ mischaracterized evidence, stating Plaintiff stopped working for non-disability reasons based upon a review of his earning summary and improperly assessed Plaintiff's subjective complaints.  (Dkt. No. 7 at 11-15.)

In general, it is the function of the ALJ, not reviewing courts, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant," courts will defer to the ALJ's determinations as long as they are supported by substantial evidence.  *Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted); *accord Selian v. Astrue,* 708 F.3d 409, 420 (2d Cir. 2013).  For the reasons outlined herein, the ALJ failed to properly assess Plaintiff's subjective complaints and the ALJ's determination was not supported by substantial evidence.

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms.  *See* 20 C.F.R. § 404.1529[2].  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. § 404.1529(a).

---

[2]      Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) plaintiff's daily activities; (2) the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record "for the reasons explained in this decision."  (T. 21.)  The ALJ reasoned, despite Plaintiff's assertion his breathing prevented him from working, "it appears that he did not work for non-disability reasons, given no reported substantial gainful activity in years."  (T. 22.)  The ALJ further reasoned, "the objective evidence is sparse for the period under review" and Plaintiff "does not yet use a nebulizer."  (*Id*.)  The ALJ considered Plaintiff's activities of daily living, such as watching TV and his ability to perform self care, and determined such activities do not indicate "work-precluding limitations."  (*Id*.)  The ALJ

further concluded Plaintiff's allegations of breathing difficulty was "inconsistent" with Plaintiff's activities of smoking.  (T. 24.)

Overall, "the ALJ's adverse credibility finding, which was crucial to his rejection of [Plaintiff's] claim, was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider all of the relevant medical and other evidence [under] 20 C.F.R. § 404.1545(a)(3)."  *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010)[3].

First, the ALJ erred in determining Plaintiff's statements concerning work-precluding breathing problems were inconsistent with treatment.  To be sure, the objective medical evidence during the relevant time period is "sparse."  (T. 22.)  In addition, an ALJ "is permitted to consider a Plaintiff's failure to seek treatment for alleged disabilities when evaluating a Plaintiff's credibility with respect to statements of the extent of the impairments."  *Miller v. Colvin*, 85 F. Supp. 3d 742, 755 (W.D.N.Y. 2015).  However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  SSR 16-3p.  Here, the ALJ found Plaintiff's symptoms inconsistent with his failure to seek treatment without any consideration of possible reasons.

Second, the ALJ erred in her conclusion Plaintiff's statements were inconsistent with the record because Plaintiff continued to smoke despite his severe lung impairments.  (T. 21-22.)  As stated above, although an ALJ may find a plaintiff less credible if he fails to follow medical treatment, the ALJ is obligated to consider any

---

[3]       On March 28, 2016, SSR 16-3p superseded SSR 96-7p and eliminated the use of the term "credibility" as the regulations do not use the term.  SSR 16-3P (S.S.A. Mar. 16, 2016) ("we are eliminating the use of the term 'credibility' from our sub-regulatory poly, as our regulations do not use this term").

explanation a plaintiff may have for the failure.  Here, the ALJ failed to consider any explanation for Plaintiff's failure to quit smoking.  *Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016); *see also Goff v. Astrue*, 993 F. Supp. 2d 114, 128 (N.D.N.Y. 2012) ("[G]iven the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health.")(internal citation and quotation marks omitted).  Therefore, the ALJ erred in concluding Plaintiff's statements were inconsistent with his failure to receive treatment and his failure to quit smoking without seeking any explanation from Plaintiff.

Third, the ALJ erred in her conclusion Plaintiff's reported symptoms were inconsistent with his medication regiment.  (T. 22.)  Although the ALJ should consider treatment and medication in assessing a plaintiff's subjective complaints under 20 C.F.R. § 404.1529(c)(3), it was inappropriate for the ALJ to conclude Plaintiff's statements were not credible because Plaintiff did not use a nebulizer.  No medical source prescribed a nebulizer and nowhere in the record was it indicated that a nebulizer was an appropriate form of treatment for Plaintiff.  The ALJ essentially concluded Plaintiff's symptoms were not as severe as alleged because he did not receive the type of treatment she expected someone with his condition to receive.  *See Wilson v. Colvin*, 213 F. Supp. 3d 478, 490 (W.D.N.Y. 2016) (ALJ's conclusion plaintiff did not receive the type of treatment one would expect amounted to the ALJ playing doctor).  Therefore, the ALJ impermissibly substituted her own lay opinion in concluding Plaintiff's statements were not supported by treatment.

Lastly, the ALJ erred in her conclusion that Plaintiff's symptoms were not as severe as alleged because "it appears that he did not work for non-disability reasons,

given no reported substantial gainful activity in years." (T. 22.) This is pure speculation. The ALJ did not elaborate on her statement Plaintiff "appeared" to not work due to non-disability reasons; indeed, she cited only to Plaintiff's work history. (T. 22.) Therefore, it is unclear how the ALJ reached this conclusion. Further, the ALJ's statement that Plaintiff had "no" substantial gainful activity "in years" is misplaced. (T. 22.) Plaintiff's last reported income was in 2015, close to Plaintiff's alleged onset date of March 1, 2015 and application filing date of June 14, 2016. (T. 54, 148.) This is consistent with Plaintiff's testimony. At his 2018 hearing Plaintiff testified he last worked "about two years ago," but stopped because of his "breathing." (T. 37.) Plaintiff informed consultative examiner in August 2016 that he last worked "about six months ago" and stopped working due to his inability to "keep up" and "shortness of breath." (T. 229.) The record indicates Plaintiff worked at substantial gainful employment levels approximately one year before his application and Plaintiff consistently testified, he stopped working due to his breathing impairment. Therefore, the ALJ's statement, that Plaintiff did not have substantial gainful activity "in years" and that he did not work for non-disability reasons, was based on the ALJ's speculation.

Overall, the ALJ erred in her assessment of Plaintiff's statements of subjective complaints. Although the ALJ provided reasons for discounting Plaintiff's statements, the ALJ relied on speculation, her own lay opinion, and the ALJ failed to seek clarification from Plaintiff before discounting his statements based on failure to follow treatment.

**B.    The ALJ's Analysis of the Medical Expert's Opinion**

Plaintiff argues the ALJ's improper justifications for finding Plaintiff's statements "not entirely consistent with the medical evidence and other evidence in the record" were harmful because the medical expert stated if the ALJ found Plaintiff's statements to be credible, it would be appropriate to find Plaintiff's impairments met Listing 3.02A prior to Plaintiff's date last insured.  (Dkt. No. 7 at 15.)  For the reasons outlined below, the ALJ failed to properly assess the medical expert's opinion at step three and her determination was not supported by substantial evidence.

In general, for a plaintiff to be entitled to SSD benefits, he must meet the insured status requirements of the Act.  *See* 42 U.S.C. § 423(c); 20 C.F.R. §§ 404.130, 404.132.  Plaintiff must establish that he became disabled on or before his date last insured.  *See* 20 C.F.R. § 404.131; *see Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989).  Here, the period at issue is from Plaintiff's alleged onset date March 1, 2015 through the date last insured of June 30, 2017.

At step three of the sequential process the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526 ("the Listings").  If Plaintiff's impairments or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement, Plaintiff is disabled.  *Id*. § 404.1509.

Listing 3.02 covers chronic respiratory disorders due to any cause except cystic fibrosis.  20 C.F.R. Part 404, Subpart P, App. 1, § 3.02.  In order to meet or equal Listing 3.02A a plaintiff's pulmonary function testing ("PFT") must be equal to or less

than the values specified in a table.  *Id.*  Here, a person Plaintiff's age, sex, and height meets the Listing requirements if $FEV_1$ values are less than or equal to 1.85L.  *Id.*

Medical expert, John Pella, M.D. completed two sets of medical interrogatories. On August 9, 2018, Dr. Pella completed the first set.  (T. 292-302.)  When asked to specify Plaintiff's impairments for the period of March 1, 2015 through June 30, 2017, Dr. Pella indicated Plaintiff suffered from COPD/emphysema and finger amputation.  (T. 292.)  Regarding Plaintiff's COPD/emphysema, Dr. Pella cited results from a 2005 PFT, the consultative examination in 2016 during which Plaintiff stated he could ambulate three blocks and the examiner detected rhonchi on exam, and lastly he noted Plaintiff did not seek ER treatment nor was he hospitalized during that time.  (*Id.*)  When asked to specify Plaintiff's impairments for the period of July 1, 2017 to present, Dr. Pella indicated Plaintiff suffered from COPD/emphysema and finger amputation.  (T. 293.) Regarding Plaintiff's COPD/emphysema, Dr. Pella cited results from a January 2018 PFT, examination results showing hyperinflation and rhonchi, no ER treatment or hospitalization, and medication.  (*Id.*)

When asked if any of Plaintiff's impairments met or equaled a Listing for the period of March 1, 2015 to June 30, 2017, Dr. Pella answered "no."  (T. 293.)  Dr. Pella wrote, "prior PFT early (2/05) no significant documentation until 1/18; presumed slow deterioration of respiratory status over time period."  (*Id.*)  When asked if Plaintiff's impairments met or equaled a Listing for the period of July 1, 2017 through present, Dr. Pella checked "yes."  (*Id.*)  Dr. Pella indicated Plaintiff met the requirements of Listing 3.02A based on the 2018 PFT results of $FEV_1$ 1.57L.  (T. 294.)  When asked the "earliest date the listing(s) is met or equaled," Dr. Pella wrote, "can medically support

onset of 7/1/17 in retrospect." (*Id.*)  When asked if "the statements and opinions regarding physical limitations [are] supported by evidence in file," Dr. Pella wrote "symptoms partially credible but subjective; psychological issues may impact on perception of dyspnea."  (T. 295.)

In August 2018, Dr. Pella also filled out a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form.  (T. 297-302.)  Dr. Pella essentially indicated Plaintiff could perform light work with additional non-exertional limitations. (*Id.*)

On September 18, 2018, the ALJ sought clarification from Dr. Pella regarding his August 2018 opinion.  (T. 303.)  Specifically, the ALJ asked if evidence in the record supported an earlier onset than July 1, 2017, and if so, what date.  (*Id.*)  The ALJ stressed the period of March 1, 2015 to June 30, 2017 was "critical" and asked for clarification as to why or why not Listing level severity was met earlier than July 1, 2017. (*Id.*)

In response to the ALJ's additional question, Dr. Pella wrote:

[f]or the period prior to PFT 1/18 [6F15] there is limited objective testing to meet listing level.  The severity of values on that study make it medically probable that the claimant equaled a listing as of 7/1/17.  Prior to 7/1/17 it is medically possible he equals listing based on narrative [at] CE 8/16 [3F] which however are subjective and subject to credibility and somewhat supported by narrative and exam by Dr. Samad 1/26/18 (although still smoking!).  If you find testimony credible [,] I would suggest his equaling listing 3.02A as of CE 8/29/16.

(T. 319.)

At step three, the ALJ determined Plaintiff's impairments did not meet Listing 3.02A.  (T. 19.)  In making her determination, the ALJ relied on Dr. Pella's August 2018 opinion in which he stated Plaintiff's impairment did not meet or equal a Listing for the

period March 1, 2015 to June 30, 2017.  (*Id.*)  The ALJ noted Dr. Pella's statement the record could "medically support onset of [July 1, 2017] in retrospect," but concluded the statement was "not determinative, given that onset is after [Plaintiff's] date last insured of June 30, 2017."  (*Id.*)  Here, the ALJ erred in rejecting Dr. Pella's opinions regarding whether Plaintiff's impairment met a Listing based on her faulty evaluation of Plaintiff's subjective complaints and based on the timing of Dr. Pella's opinion.

First, the ALJ erred in her step three analysis because she ALJ failed to address Dr. Pella's October 2018 statement that it was "medically probable" Plaintiff met Listing 3.02A as of July 1, 2017 and "medically possible" Plaintiff's impairment met a Listing as early as August 29, 2016.  (T. 19, 319.)  An ALJ cannot ignore evidence which is significantly more favorable to Plaintiff.  *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (failure to discuss evidence "requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered"); *see Sottasante v. Colvin*, 209 F. Supp. 3d 578, 594 (W.D.N.Y. 2016) (ALJ's failure to address an opinion that was "significantly more favorable" to plaintiff was not harmless error); see also *Amy P. v. Comm'r of Soc. Sec.*, No. 2:17-CV-94, 2018 WL 2095345, at *6 (D. Vt. May 7, 2018) ("[A]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence.") (internal citations omitted).

To be sure, the ALJ outlined and discussed Dr. Pella's October 2018 statement in her step four analysis of Plaintiff's subjective complaints; however, the reasoning provided by the ALJ for discounting the opinion was improper.  (T. 23.)  The ALJ discounted Dr. Pella's opinion, that Plaintiff's impairment could meet a Listing if

14

testimony provided to the consultative examiner in 2016 was to be believed, based on the consultative examiner's physical examination and Plaintiff's smoking addiction. (T. 24.)  As outlined above, the ALJ erred in his assessment of Plaintiff's subjective complaints.  The ALJ erred in failing to discuss Dr. Pella's opinion in her step three analysis and further, the ALJ erred in discounting Dr. Pella's opinion based on her faulty evaluation of Plaintiff's subjective complaints.  Even if Dr. Pella's opinion, that Plaintiff's impairment could meet the Listing requirements as far back as 2016 if the ALJ credited Plaintiff's subjective statements, was properly reject, the ALJ nonetheless erred in her step three determination.

Second, and most importantly, the ALJ erred in dismissing Dr. Pella's opinion based solely on timing.  (T. 19.)  In her step three determination, the ALJ cited to Dr. Pella's August 2018 opinion in which he stated testing results "can medically support onset of 7/1/17 in retrospect."  (*Id.*)  The ALJ concluded Dr. Pella's opinion was "not determinative, given that onset is after [Plaintiff's] date last insured."  (*Id.*)

Dr. Pella's opinion cannot be dismissed simply because the date provided was after Plaintiff's date last insured.  *See Brown v. Astrue*, 4 F. Supp. 3d 390, 399 (N.D.N.Y. 2012) (the fact that an opinion was prepared after the date last insured does not, without more, provide a basis for disregarding the opinion); *see Lisa v. *399 Sec'y of Dep't of Health & Human Servs.,* 940 F.2d 40, 44 (2d Cir.1991) ("[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [i.e., insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be

presumed to have been present and to have imposed limitations as of the earning requirement date.") (citing *Gold v. Secretary of Health, Educ. and Welfare,* 463 F.2d 38, 41-42 (2d Cir.1972)); *see Arnone*, 882 F.2d at 39 ("it is conceivable that [plaintiff] could demonstrate such a disability without contemporaneous evidence"); *see also Disarno v. Astrue,* No. 09-CV-64, 2010 WL 2629808, at *3 (W.D.N.Y. June 28, 2010) (noting that "a retrospective diagnosis may shed considerable light on the seriousness of a Plaintiff's condition during the relevant period").

To be sure, a medical opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period.  *See Williams v. Colvin*, 98 F. Supp. 3d 614, 632 (W.D.N.Y. 2015) (the ALJ was not required to consider medical opinions outside of the relevant time period); *McNally v. Comm'r of Soc. Sec.,* No. 5:14-CV-00076, 2015 WL 3621437, at *13 (N.D.N.Y. June 9, 2015) (ALJ properly gave little weight to opinion of consultative examiner that was prepared more than eight years after the date last insured); *Shook v. Comm'r of Soc. Sec.,* No. 12-CV-185, 2013 WL 1213123, at *6 (N.D.N.Y. Jan. 25, 2013), *report and recommendation adopted,* No. 1:12-CV-185, 2013 WL 1222008 (N.D.N.Y. Mar. 25, 2013) (doctor's opinion written more than two and a half years after date last insured did not relate to relevant time period).

However, "[m]edical opinions given after the date that [plaintiff's] insured status expired are taken into consideration if such opinions are relevant to [plaintiff's] condition prior to that date."  *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003); *see also Shook v. Comm'r of Soc. Sec.*, No. 12-CV-185, 2013 WL 1213123, at *6 (N.D.N.Y. Jan. 25, 2013) ("[E]vidence cannot be disregard solely because it post-dates

the relevant time period. Rather, information provided after the date last insured should

be considered to the extent it sheds light on the Plaintiff's condition as of the relevant

time period."), *report and recommendation adopted*, 2013 WL 1222008 (N.D.N.Y. Mar.

25, 2013); s*ee Durakovic v. Comm'r of Soc. Sec.*, No. 3:17-CV-0894, 2018 WL

4039372, at *4-5 (N.D.N.Y. May 30, 2018), *report and recommendation adopted*, No.

3:17-CV-0894, 2018 WL 4033757 (N.D.N.Y. Aug. 23, 2018) ("While a physician's

opinion can be too temporally remote from the date of last insured and excluded as a

result, Dr. Li's opinion was issued only four months after the date last insured.").

Dr. Pella opined the "severity of values" from the 2018 PFT, conducted

approximately seven months after Plaintiff's date last insured, made it "medically

probable" Plaintiff equaled a listing as of July 1, 2017 and "medically possible" he

equaled a listing as far back as August 2016.  (T. 319.)

Based on Dr. Pella's opinion, and common sense, if Plaintiff met Listing 3.02A on

July 1, 2018, then he also met the Listing the day before.  To be sure, for plaintiffs who

suffer a traumatic injury or event, the date of the event or injury is used at the date

plaintiff first met the statutory definition of disability.  SSR 18-01p (S.S.A. Oct. 2, 2018)[4].

Here, however, Plaintiff's impairments of COPD/emphysema are non-traumatic,

progressive impairments that are expected to gradually worsen over time.  *See id*.  As

stated by Dr. Pella, Plaintiff's impairments were "presumed [to be a] slow deterioration

---

[4]        This SSR is applicable on October 2, 2018. We will use this SSR beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in appropriate cases when we make a decision after the court's remand.  SSR 18-01p (S.S.A. Oct. 2, 2018).

of respiratory status over time period." (T. 293.)  Due to the nature of Plaintiff's impairment, and Dr. Pella's opinion, the ALJ's determination that the impairment did not equal a listing as of his date last insured is unreasonable.

Here, remand for calculation of benefits is proper because "the record[ ] provide[s] persuasive evidence of total disability that render[s] any further proceedings pointless." *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 11 (2d Cir. 2020) (citing *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999)).  The record contains PFT testing results indicating Plaintiff's met the requirements under C.F.R. Pt. 404, Subt. P, Appendix 1 § 3.02A, thereby establishing Plaintiff met the criteria for disability based on Plaintiff's breathing impairments under the Listing.  (T. 267.)  Dr. Pella opined the results of testing retroactively supported listing level severity as of July 1, 2017; further, he opined Dr. Samad's January 26, 2018 exam and Plaintiff's testimony, could support listing level severity as of August 29, 2016.  Based on Dr. Pella's opinion and the progressive nature of Plaintiff's impairment, it is clear and certain Plaintiff met Listing 3.02A on June 30, 2017, his date last insured.  The record is complete, and additional development of evidence is not required, and further administrative proceeding would serve no purpose.  Therefore, remand for calculation of benefits is warranted.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 8) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED FOR THE CALCULATION OF**

**BENEFITS**, pursuant to 42 U.S.C. § 405(g).

Dated:          June 2, 2020

William B. Mitchell Carter
U.S. Magistrate Judge